# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY WYNN, | Case No. 1:07-cv-00688-TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |
| Defendant. | |

Plaintiff Ricky Wynn ("Plaintiff" or "Claimant") seeks judicial review of an administrative decision denying his claim for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1883d. Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Plaintiff filed his complaint on May 4, 2007 (Doc. 1), and his opening brief on December 13, 2007 (Doc. 17). The Commissioner filed his opposing brief on January 14, 2008. (Doc. 19). Plaintiff filed his reply brief on January 17, 2008. (Doc. 20).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated June 14, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

///

## JURISDICTION

On April 15, 2004, Plaintiff protectively filed an application for disability insurance benefits and SSI payments. (Administrative Record ("AR") 52-54, 291-293). After Plaintiff's application was denied initially and on reconsideration, Plaintiff and his counsel appeared before Administrative Law Judge ("ALJ") Bernard A. Trembly on October 26, 2006. (AR 312-326). On November 16, 2006, the ALJ issued a determination that Plaintiff was not disabled. (AR 12-20). The Appeals Council denied a request for review on March 7, 2007. (Id.). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g).[1]

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was born in March 1960 and was forty-six years old at the time of the hearing. (AR 52, 55, 91, 317). He testified that he was single and had no children. (AR 317). He completed high school and possesses past relevant work experience as a laborer, radiator mechanic, tow truck driver, mechanic, and window and door replacement laborer. (AR 13, 64-71, 95-102, 317).

Plaintiff testified that the last time he worked was in 2002; prior to that time, he had been working "pretty steady." (AR 317). From 2002 until 2004, he lived in Arkansas but did not seek work because of his medical problems. (AR 318). He came to California in 2004 but did not look for work because he did not believe he could hold a job, given his medical problems. (Id.). He alleges that he became disabled on December 14, 2002, due to headaches, elbow, back, and chest pain and depression. (AR 49-63; 86-103; 109-113; 123-125).

Plaintiff testified he suffers from depression and had been taking three different medications. (AR 320). He considered his mental problems to be the most serious problem preventing him from returning to work. (Id.). However, Plaintiff testified that he suffers pain throughout his entire right side and takes Vicodin for the pain. (AR 320-321). Plaintiff testified that he was born without a

---

[1] The initiation of an appeal in the district court must be commenced within sixty days of the Appeals Council's decision. 42 U.S.C. § 405(g). As mentioned, on May 4, 2007, Plaintiff timely filed this action. (Doc. 1).

1  right chest muscle, so his right arm has atrophied and is smaller than his left.  (AR 321).

2  Plaintiff testified that he suffers daily headaches that last from twenty to thirty minutes.  (AR

3  322).  Additionally, his neck pain requires him to turn his entire body rather than just his neck.  (Id.).

4  Plaintiff testified that his neck pain would be rated eight on a scale of ten.  (Id.).  Plaintiff testified

5  that the pain medications make him sleepy and he has to lie down during the day for two or three

6  hours.  (AR 322-323).

7  Plaintiff testified that he does no housework or cooking because of his medical problems.

8  (AR 323).  His feet frequently get numb, so the only exercise he gets is walking.  (AR 324).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is more than a mere scintilla but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Webb, 433 F.3d at 686,(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted); see Orn v. Astrue, 495 F. 3d 625, 630 (9th Cir. 2007) (summarizing standard of review in Social Security cases).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in

///

3

weighing the evidence and making the decision. <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(I), (b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements set forth in 20 C.F.R. §§ 404.1520(c), 416.909, i.e. the impairment(s) are expected to result in death or continuously lasted or be expected to last at least twelve months. If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. <u>Id.</u>

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404, 1520(d), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not

disabled. 20 C.F.R. §§ 404,1520(f), 416.920(a)(4)(iv), (e); 416.960(b). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c). See Bowen v. Yuckert, 482 U.S. 137, 144, 107 S. Ct. 2287 (1987).

The initial burden of proof rests upon a claimant to establish that he "is entitled to the benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ADMINISTRATIVE FINDINGS**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of December 14, 2002. (AR 18). At step two, the ALJ determined that Plaintiff suffers from severe impairments, including degeneration of the thoracic and lumbar spine, degenerative osteoarthritis of the cervical spine, degenerative changes in the right shoulder, soft tissue swelling of the right elbow, and an affective disorder, i.e., depression. (AR 18).

The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for many reasons, including, <u>inter alia</u>, Plaintiff's list of daily activities conflicts with his allegations regarding his limitations, no evidence exists of atrophy, weight loss, or sleep deprivation due to pain or depression, lack of medical opinions that Plaintiff's pain cannot be controlled with more conservative treatments, Plaintiff's failure to take full advantage of treatment modalities offered to

///

him, and evidence that medications control Plaintiff's pain and absence of evidence of side effects from those medications. (AR 16-17).

At step three, while finding that Plaintiff is "unable to perform any of his past relevant work and has no transferable skills," the ALJ found that his impairments "limit him to light level work, on a sustained basis," but that he "has the residual functional capacity to perform substantially all of the full range of light work." (AR 17).

Regarding Plaintiff's mental impairment, the ALJ found that he "retains the mental residual functional capacity to perform simple, repetitive and complex, detailed tasks, in a low stress work environment with limited contact with the public. (AR 19). Accordingly, the ALJ found that the Plaintiff was not under a disability within the meaning of the Social Security Act at any time through the date of the decision. (AR 19).

**ISSUES**

Plaintiff's opening brief raises the following two issues:

(1) The ALJ's finding of non-disability is not supported by substantial evidence; and,

(2) The ALJ failed to properly evaluate Plaintiff's subjective complaints.

(Doc. 17).

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record to support the decision.

**DISCUSSION**

**A. Substantial Evidence Supports The ALJ's Finding Of Non-Disability.**

Plaintiff contends that the ALJ's finding that he was not disabled is not supported by substantial evidence. (Doc. 17, p. 6). The Court disagrees.

1. Physical Impairments.

Plaintiff contends that the ALJ did not have before him any medical opinion addressing Plaintiff physical impairments, and that the ALJ's opinion alone cannot constitute substantial evidence to support a finding that Plaintiff's residual physical capacity ("RFC") permits him to engage in "light work." (Doc. 17, p. 6). However, rather than further developing the administrative

6

record by obtaining such an opinion, Plaintiff contends that the ALJ "took it upon himself to render a medical opinion" regarding Plaintiff's ability to perform light work. (Id. at pp. 6-7). The Commissioner concedes that the record does not contain any medical opinion of physical functional limitations, but nevertheless argues that the medical evidence in the record as well as Plaintiff's own testimony provides substantial evidence for the ALJ's findings and that Plaintiff had the burden of presenting such medical opinions himself to support a finding of disability. (Doc. 19, pp. 5-6).

In his ruling, the ALJ found that while Plaintiff "has impairments that are 'severe' within the meaning of the Social Security Regulations," they were not "'severe' enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (AR 14). Despite his impairment, the ALJ found that Plaintiff was nevertheless "able to perform other work which exists in significant numbers in the national economy." (Id.).

Specifically, the ALJ found as follows:

> The undersigned...hereby finds the claimant has severe impairments: degenerative changes of the thoracic spine and the lumbar spine; degenerative osteoarthritis of the cervical spine; degenerative changes of the right shoulder; soft tissue swelling of the right elbow; and an affective disorder, viz., a depressive disorder, not otherwise specified. The evidence reveals the claimant's lead levels are within normal range. The claimant has no impairment or combinations of impairments which meets or equals any of the Commissioner's Listing of Impairments."

(AR 15). In light of these findings, the ALJ concluded that "claimant's physical impairments limit him to light level work, on a sustained basis." (Id.).

The standard of review regarding substantial evidence has already been discussed and will not be repeated. Suffice it to say that substantial evidence is more than a mere scintilla but less than a preponderance, McAllister, 888 F.2d at 601-602, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686. After reviewing the entire record, the Court agrees with the Commissioner that substantial evidence supports the ALJ findings as to non-disability.

A claimant's "RFC" is "what [he] can still do despite her physical, mental, nonexertional, and other limitations." Burger v. Astrue, 2008 WL 576335, *4 (C.D.Cal. 2008), (citing Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001) and Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989)); 20 C.F.R. § 416.945(a)(1); SSR 96-8p. When determining a claimant's RFC, the ALJ

considers, inter alia, the individual's physical abilities and limitations, then the individual's RFC to perform work on a regular basis. 20 C.F.R. § 416.945(a)(4) and (a)(5)(ii)(b). "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying . . . or reaching . . . may reduce your ability to do past work and other work." 20 C.F.R. § 416.945(a)(5)(ii)(b).

Regarding the specific allegation here that the ALJ should have further developed the administrative record to obtain a medical opinion regarding Plaintiff's RFC, the ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when "the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460; Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty may require the ALJ to obtain additional information by, inter alia, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a. The ALJ's decision may be set aside due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as a result of said failure. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991). Thus, the Ninth Circuit places the burden of proving prejudice or unfairness on the claimant.

In light of the foregoing, the issues are twofold: (1) whether the RFC determination here supported by substantial evidence in the record; and (2) whether the ALJ make an RFC determination without a medical opinion regarding the same in the record, regardless of whether the other evidence in the existing record is substantial enough to support the ALJ's finding. The Court believes that both questions must be answered in the affirmative.

As to the first issue, the Court notes that the evidence produced by Plaintiff regarding his physical impairments could be summarized succinctly as spinal degeneration, right shoulder problems, right elbow swelling, and pain. The medical evidence did not establish that Plaintiff could not perform light work. Indeed, Plaintiff testified that he continued to work for two years *beyond* the date he claims he became disabled and that he stopped working for reasons unrelated to his health.

(AR 317-318).[2]  Additionally, Plaintiff testified that his mental difficulties, not his physical problems, were the most serious problems preventing him from returning to work.  (AR 320).   From the foregoing, the Court concludes that substantial evidence supports the ALJ's findings as to Plaintiff's RFC.

As to the second issue, Plaintiff has not cited, and the Court has not found, any authority for the proposition that an RFC determination otherwise supported by substantial evidence in the record is rendered invalid by the absence of an express medical opinion on the issue.  Indeed, the Social Security Regulations themselves indicate otherwise.  20 C.F.R. § 404.1513(a) explains the various types of "acceptable medical sources" and explains what a "medical report" should include, inter alia, as follows:

> "A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section (except in statutory blindness claims).  Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete."

20 C.F.R. § 404.1513(b)(6).

The scant authority on this issue within the Ninth Circuit is consistent with the Regulation, indicating that when the administrative record does not contain medical reports offering opinions as to a claimant's limitations, the inquiry then focuses on whether the ALJ's findings are supported by substantial evidence in the existing record.  Purvis v. Apfel, 57 F.Supp. 2d 1088, 1092 (D.Or. 1999); Davis v. Barnhart, 2003 WL 21751851 (D. Or. July 28, 2003) *2; see Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995).  Thus, since, as discussed above, the ALJ's finding as to Plaintiff's RFC is supported by substantial evidence in the record, the absence of a medical opinion as to this issue does not automatically require reversal of the Commissioner's ruling.

Nor, in this instance, did the ALJ err in failing to further develop the record.  The administrative record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence and to make appropriate findings regarding RFC.  There were ample

---

[2]Plaintiff  testified that he stopped working at his former job in 2002 when the business was sold.  (AR 317).  He began to receive unemployment benefits and looked for other jobs but there were few jobs available in the community in Arkansas where Plaintiff lived. (Id.).

records detailing Plaintiff's physical and mental impairments, and how the ailments adversely, or contrarily, failed to, affect him from working or engaging in daily activities. (See generally AR).

Moreover, it was Plaintiff's duty to prove that he was disabled. See 42 U.S.C. § 423(d)(5)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"); accord Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)("Clem has the burden of showing that he is disabled"). The Code of Federal Regulations explains:

> "...you have to prove to us that you are blind or disabled. Therefore you must bring to our attention everything that shows that you are blind or disabled. <u>This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis</u>. We will consider only impairment(s) you say you have or about which we receive evidence."

20 C.F.R. § 404.1512(a)(2000)(Emphasis supplied); accord, 20 C.F.R. § 404.1412( c)(2000)("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say your are disabled").

Here, Plaintiff did not provide the ALJ with <u>any</u> medical opinion testimony regarding his RFC and thus, in that regard, he failed to meet his statutory and regulatory burden to present evidence of his disability. Finally, Plaintiff has not proven prejudice or unfairness. Vidal v. Harris, 637 F.2d at 713. The Court thus finds that the ALJ was capable of rendering a proper decision without a medical opinion as to RFC and without further developing the administrative record, and that the existing record contains substantial evidence supporting the ALJ's findings. Accordingly, the Court concludes that the ALJ's determination on non-disability should be affirmed.

  2. Mental Impairment.

Plaintiff also contests the ALJ's finding that he retains the ability to perform "simple, repetitive and complex, detailed tasks in a low stress work environment with limited public contact," contending that the ALJ erred in rejecting Plaintiff's treating psychologist's opinion regarding Plaintiff's mental disabilities. (Doc. 17, p. 7). The Court concludes that the ALJ's findings in this regard were supported by substantial evidence.

///

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Rodriguez v. Bowen, 876 F.2d 759, 761-762 (9th Cir. 1989); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or to the ultimate issue of disability. Rodriguez, 876 F.2d at 761-762, n. 7. The ALJ may thus disregard the treating physician's opinion whether or not that opinion is contradicted. Id. When the opinion of a treating or examining physician is not contradicted by another physician, it can be rejected only for "clear and convincing" reasons that are based on substantial evidence in the record. Orn, 495 F. 3d at 631. When a treating or examining physician's opinion is contradicted by another physician, it can be rejected for "specific and legitimate" reasons supported by substantial evidence in the record. Murray v. Heckler, 722 F. 2d 499, 502 (9th Cir. 1983). The ALJ "can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).

Here, Dr. Lovestrand, Plaintiff's treating physician for his mental problems, opined that Plaintiff had mental functional limitations such that he "would have difficulty functioning around other people," that "poor concentration would impair his performance," that he "would likely be intimidated by unfamiliar tasks," that he would risk having panic attacks in stressful situations, and that Plaintiff's "low energy and psychomotor retardation...would likely translate into sub-par performance at any task." (AR 282; 287).

By contrast, examining psychologist Dr. Lefavour opined that Plaintiff's mental status examination was well within normal limits, (AR 147), and that Plaintiff was moderately impaired in social functioning, possibly moderately impaired in adaptability and social interaction, likely moderately impaired in his "ability to persist in completion of tasks," and mildly impaired in ability

to perform work-related mental activities. (AR 148). Dr. Lefavour also observed that Plaintiff's "present ability to function independently with regard to managing his own funds is mildly compromised." (Id.).

Additionally, a non-examining government psychologist, Dr. Callao expressed the view that, based on the existing medical evidence, Plaintiff could understand "a wide variety of simple and more detailed instructions," could perform "simple and complex tasks, reliably over the course of a normal work schedule" with only occasional interference from depressive symptoms, would "function best in a fairly isolated work environment, away from the general public and with low social demands from his coworkers and supervisors," and could "function independently in his daily activities." (AR 151). Dr. Callao's opinion was in part based on Dr. Lefavour's opinion. (AR 172).

In his ruling, the ALJ rejected Dr. Lovestrand's opinion in favor of Dr. Callao's opinion. (AR 16). In so doing, the ALJ stated his reasons as follows:

> After considering the totality of the evidence, the undersigned rejects Dr. Lovestrand's opinions of functioning and disability for the following specific and legitimate reasons as required by the 9th Circuit Court of Appeals and pursuant to Social Security Rulings 96-2p and 96-5p. <u>First</u>, although Dr. Lovestrand reports that he has seen the claimant since June 21, 2005, he goes on to admit that he has seen the claimant for only a total of four office visits in the past sixteen months. <u>Second</u>, most of the report is a summary of the claimant's medical records which are in file and are not the usual assessment based on his own records. <u>Third</u>, in fact, Dr. Lovestrand submitted none of his office records or progress notes. <u>Fourth</u>, although Dr. Lovestrand noted he has submitted a functional assessment, he noted he has not seen the claimant in a work setting and can only imagine his ability to function. Obviously then, his functional assessment is not based on his records, notes and findings. <u>Fifth</u>, the other substantial evidence including progress notes from his treating physician, do not reveal the severity of his inability to function as reported by Dr. Lovestrand. <u>Sixth</u>, the ability to work is a legal issue reserved for the Commissioner, not a medical one to be concluded by a physician. To the extent that Dr. Lovestrand's opinions of disability are not well supported by other substantial evidence, including any of his own, they are not deserving of the great weight generally accorded to a treating physician and are rejected."

(AR 45-46).

Plaintiff contends that the ALJ's rationale for rejecting Dr. Lovestrand's opinion was legally insufficient. (Doc. 17, p. 7). The Commissioner, on the other hand, maintains that it is the ALJ's province to resolve conflicts in the evidence, that an ALJ may reject the opinion of a treating source in favor of a non-treating source if the ALJ gives valid reasons for doing so, and that the ALJ's stated reasons for rejecting the opinion of Dr. Lovestrand are sufficient to justify his findings. (Doc. 19, pp. 7-8).

The Court agrees with the Commissioner that the ALJ's reasons for rejecting Dr. Lovestrand's opinions was appropriate. The ALJ's reasons for so doing, quoted above, meet the legal burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751. Dr. Callao's opinion was supported in key respects by Dr. Lefavour's opinions, which opined that Plaintiff "performed beyond what is usual for non-impaired individuals." (AR 147).[3] Thus, those opinions, which are consistent with other evidence in the record, may constitute substantial evidence. Barnhart, 278 F.3d at 956. Moreover, as the ALJ observed, Lovestrand's opinion as to the severity of Plaintiff's mental impairments was inconsistent with evidence from Plaintiff's treating physician, Dr. Rodriguez Lopez, who noted that Plaintiff was negative for bipolar disorder but appeared to have ADHD. (AR 16; 138-140). Dr. Rodriguez Lopez prescribed medications for Plaintiff but did not note any restrictions on his activities or functioning. (AR 140). Finally, even Plaintiff himself testified that he seem to be "doing pretty well" with his current medications. (AR 320).

From the foregoing, the ALJ's reasons for rejecting Dr. Lovestrand's opinions were sufficient and the other evidence in the record, together with the opinions of Drs. Callao and Lafavour, constitute substantial evidence supporting the ALJ's finding that Plaintiff was not disabled by his mental condition.

### B. The ALJ's Evaluation Of Plaintiff's Subjective Complaints Was Supported By Substantial Evidence.

Plaintiff next contends that the ALJ failed to set forth legally sufficient reasons for rejecting Claimant's subjective complaints. (Doc. 17, p. 10). Claimant argues that the medical evidence establishes that he had medically determinable physical impairments that would be reasonably expected to produce some pain and functional limitations. (Id.). Defendant argues that the ALJ's

---

[3]Dr. Lefavour concluded by stating as follows: "Although he reports difficulty in concentration, his performance on the mental status exam was [within normal limits]. Presently, the claimant appears to be moderately impaired in social functioning; he reports a strong fear of being around other people, of getting angry and hurting somebody. His level of adaptability and social interaction may be moderately impaired due to his problem with anger management. His ability to persist in completion of tasks is likely moderately impaired due to depression. The claimant appears to be mildly impaired relative to being able to perform work related mental activities....It is likely that with appropriate psychopharmacological treatment and psychotherapy, his reported symptoms will improve with time allowing for more independent function." (AR 148).

stated reasons for rejecting Claimant's subjective complaints were sufficient. (Doc. 19, p. 9).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. Pursuant to Social Security Ruling 96-7p, however, the ALJ may not disregard the claimant's pain testimony only because there is a lack of medical records evidencing an impairment that causes pain. SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Nonetheless, if there is no evidence that the claimant is malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281. This level of specificity is crucial because, in its absence, effective judicial review may not be possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ cannot reject a claimant's subjective testimony "without making findings sufficiently specific to permit the reviewing court to conclude that the ALj did not arbitrarily discredit the claimant's testimony. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994). Among the factors the ALJ may consider in making credibility determinations are the claimant's "ability to perform household chores, the lack of side effects from prescribed medications, and the unexplained absence of treatment for excessive pain." See id. "Once the claimant produces objective medical evidence of an underlying impairment, the adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." See Bunnell v. Sullivan, 947 F. 2d 341, 345 (9th Cir. 1991). "Although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion. Id. "These findings, properly supported by the record, must be

sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-346. "A reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain. Id. at 346. "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." See Lester v. Chater, 81 F.3d 821, 834(9th Cir. 1995).

Here, as Defendant correctly points out, the ALJ provided a number of specific, legitimate reasons for finding, based on clear and convincing evidence, that Plaintiff's allegations of subjective disability were unreliable:

> First, the claimant's allegations of significant limitations are not borne out in his description of his daily activities. He told Dr. Lefavour on August 12, 2004 that he cares for his personal needs, prepares meals, takes care of his finances, and is able to live alone. He reported on his Daily Activity Questionnaire dated July 12, 2004 that he can take his medication as prescribed, needs no assistance with household chores, dishes, laundry or yard work, is able to ride the bus, reads newspapers, writes, hunts, fishes, hikes, camps, plays horseshoes and bikes (Exhibits 2E and 2F/3). Second, there is no evidence of disuse or atrophy. Despite the fact, the claimant has degenerative arthritis, he is described as well developed with no noted deformities, motor or sensory deficits (Exhibits F/6, 4F/7 and 6F/20, 28 and 30). Third, there is no evidence of a severe weight loss due to loss of appetite due to pain or depression. Although the claimant has been described as thin, he is also noted to be well nourishes and weighs 150 pounds (Exhibits 6F/30 and 88). Fourth, there is no evidence of sleep deprivation due to pain or depression. Although the claimant has reported poor sleep and problems getting to sleep, he is noted to be alert, fully oriented, neurologically intact, and in no acute distress (Exhibits 1F3 and 6, 4F/6 and 7, and 6F/30 and 88). Fifth, no physician has opined the claimant's pain cannot be controlled with conservative treatment modalities. Sixth, in fact, the evidence reveals the claimant has not taken full advantage of treatment modalities offered to him. The evidence indicates that he quit his physical therapy within a month of beginning (Exhibit 6F/3-5). Seventh, although the claimant has reported problems with memory and concentration, he has been found to have normal memory and concentration (Exhibit 2F/5). Eighth, the claimant's medications have no[t] caused any disabling side effects. Ninth, although the claimant has complained of severe pain, he has also reported his pain is controlled fully with medication (Exhibit 6F/88). Ninth, although the claimant has reported that he is unable to work, he admitted that at this last job, the business was sold and he was laid off. Tenth, the claimant has alleged incapacitating symptoms and limitations. However, the objective medical evidence of record does not reflect the existence of an impairment or combination of impairments which would produce the devitalizing symptoms alleged by the claimant.

(AR 16-17). Based on these findings, the ALJ further found that "the claimants allegations of disabling pain, symptoms and limitations, when considered pursuant to the law of the 9th Circuit Court of Appeals, Social Security Rulings 96-3p and 96-7p and the pertinent regulations, are not credible to the extent alleged." (AR 17).

The Ninth Circuit has held that, when a claimant testifies about disabling pain, but does not seek treatment for it or, as here, comply with prescribed treatment, i.e., physical therapy, the ALJ may find that the claimant's pain testimony is "unjustified or exaggerated." Orn, 495 F.3d at 638. This Court further notes that there are any number of clear and specific findings that the ALJ can make, many of which are identified in SSR 96-7p. Such findings include: (1) whether "the level or frequency of treatment is inconsistent with the level of complaints," SSR 96-7p (Medical Treatment History), (2) whether "the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," id., (3) the consistency of statements made by the claimant to physicians, to those deciding benefits under other programs (e.g., workers' compensation), and to the Social Security Administration itself, while recognizing that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and [that] this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." Id.

Each of these and other potential findings are fact-specific, and are precisely the province of the ALJ. Some other ALJ findings, as identified in reported cases, are illustrative and demonstrate the many ways in which ALJs can draw credibility inferences from the facts at hand: (1) an ALJ found that claimant's testimony that her neck pain was so severe that she had to cut her long hair for relief was contradicted by the fact that her hair reached well below her shoulders at the administrative hearing, Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003); (2) the same ALJ found that claimant's testimony that she had never undergone physical therapy was contradicted by medical records indicating that she had, in fact, attempted such treatments, id.; (3) an ALJ found that claimant's "'extremely poor work history'" and low "'propensity to work'" negatively affected her credibility regarding her assertion that her disability precluded work, Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); (4) the same ALJ found that claimant had not been a reliable historian, "'presenting conflicting information about her drug and alcohol usage,'" id.;(5) the same ALJ also found that claimant's efforts to impede accurate testing of her limitations argued strongly against her credibility; (6) an ALJ found that claimant had been uncooperative during consultative examinations, and illustrated that finding with a specific statement by a physician regarding claimant's "'poor

effort,'" Tonapetyan, 242 F.3d at 1148; (7) the same ALJ found that claimant tended to exaggerate, and illustrated that finding with a specific comment by a physician that claimant was deficient during cognitive testing but "'much better'" when giving reasons for her inability to work, id.; (8) an ALJ found that claimant's pain assertions were inconsistent with the opinion of his own treating physician, who was "'quite emphatic in his report about the lack of objective evidence to support claimant's complaints of pain and weakness,'" Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995); (9) an ALJ found that claimant's limited and recent use of non-narcotic pain medications were inconsistent with her claim of extreme pain, Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048-1049 (C.D. Cal. 1998); and (10) the same ALJ found that claimant's conservative treatment regimen was inconsistent with her complaints of extreme pain, id. at 1049.[4]

Even a summary comparison of the specific, detailed and numerous reasons set forth in the ALJ's ruling in this case with the above-referenced regulations and case law construing those regulations makes it abundantly clear that the ALJ's reasons were legally sufficient to justify a finding that Plaintiff's subjective complaints were exaggerated and unreliable. The inconsistencies in Plaintiff's descriptions of his daily activities and medical problems, the absence of symptoms normally associated with severe pain and depression, medical findings that Plaintiff's allegedly severe problems were within normal limitations, the absence of medical opinions that Plaintiff's difficulties cannot be treated with conservative modalities, and Plaintiff's own failure to follow the prescribed modalities for physical rehabilitation, together with all of the other reasons set forth in the ALJ's ruling, are specific, precise, and legitimate reasons to justify a finding by the ALJ that Plaintiff's allegations regarding his level of pain were not credible. Accordingly, the Court rejects Plaintiff's contention that the ALJ failed to properly evaluate Plaintiff's subjective complaints.

///

///

---

[4] For a brief synopsis of factors that can form a basis for ALJ credibility findings, see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains").

CONCLUSION

For the reasons discussed above, this Court finds no error in the ALJ's analysis, which was based on proper legal standards and is supported by substantial evidence. Accordingly, this Court HEREBY ORDERS as follows:

1. That Plaintiff's Social Security complaint is DENIED; and

2. That the Clerk of the Court is DIRECTED TO ENTER judgment for Defendant MICHAEL J. ASTRUE and against Plaintiff RICKY WYNN and close this case.

IT IS SO ORDERED.

Dated:   **September 30, 2008**                                         **/s/ Theresa A. Goldner**
                                                                          UNITED STATES MAGISTRATE JUDGE